

**EOD**

03/29/2012

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CROWN RANCH DEVELOPMENT LTD.** | § | Case No. 11-90052 |
| xx-xxx4626 | § | |
| 6004 S. First St., Lufkin, TX 75901 | § | |
| | § | |
| Debtor | § | Chapter 11 |

| | | |
|---|---|---|
| MITCHAEL B. PAGE and | § | |
| BRENDA PAGE | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 11-9001 |
| | § | |
| CROWN RANCH DEVELOPMENT, LTD. | § | |
| ESTEX, INC.; HAROLD ESTES; | § | |
| ERIC L. ESTES; JOHN CONINE | § | |
| MICHAEL WEINGRAD; | § | |
| LANDSTAR REALTY ADVISORS, INC.; | § | |
| WOODCREEK DEVELOPMENT CO.; | § | |
| and J. TROY MAXWELL | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OF DECISION[1]
## GRANTING IN PART AND DENYING IN PART
## MOTION FOR SUMMARY JUDGMENT FILED BY
## DEFENDANT, CROWN RANCH DEVELOPMENT, LTD.

On this date the Court considered the Motion for Summary Judgment filed by

Defendant Crown Ranch Development, Ltd. (hereafter "Crown Ranch") in the above-

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

referenced adversary proceeding and the responsive pleadings filed by both parties thereto in this adversary proceeding.  The complaint in this action alleges a myriad of Texas Deceptive Trade Practices ("DTPA") violations, fraud, and various other claims in connection with a real estate transaction.  Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court concludes that Crown Ranch's Motion for Summary Judgment should be granted in part and denied in part.[2]

## Factual and Procedural Background[3]

The factual events underlying Plaintiffs' claims for relief arise from the sale of certain real property located outside of Houston, Texas, in a subdivision owned and operated by Crown Ranch Development, Ltd., a limited partnership organized under Texas law.  Crown Ranch caters to residents seeking property on which they can construct upscale custom homes.  Plaintiffs Mitchael and Brenda Page purchased a lot in the Crown Ranch development in July 2008 with ambitions to build a home after having visited the subdivision on multiple occasions in the preceding weeks.  During those visits, Plaintiffs spoke exclusively with two of the Defendants in this case, Michael Weingrad

---

[2]  This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a).  The Court has the authority to enter a final judgment in this adversary proceeding as against Crown Ranch since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(B) or, alternatively if characterized as a non-core matter, its resolution is necessary to adjudicate the validity and/or the amount existence of Plaintiffs' proofs of claim filed against the Debtor's bankruptcy estate.

[3] The facts presented are those the Court believes to be uncontested between the parties and are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

and John Conine, both of whom were acting at that time as representatives of Crown Ranch in some capacity.[4]

The relationship soured between the parties over the next few months as the Plaintiffs met what they viewed as unjustified resistance from Crown Ranch with regard to the specific type of home the Plaintiffs wished to build.  As a result, Plaintiffs requested for the first time in November 2008 that the contract be rescinded and that Crown Ranch repurchase the lot.  The parties communicated extensively during this time about a number of subjects including, but not limited to, the Builder's Guidelines, which Plaintiffs received for the first time on November 6, 2008, as well as the review process to be conducted regarding the Plaintiffs' proposed home plans by the Crown Ranch Architectural Control Committee (the "ACC"). As these conversations continued, Crown Ranch denied Plaintiffs' repeated requests for rescission of the contract, claiming that the formal review process had not actually been triggered by the Plaintiffs.[5]  Through that process and the granting of variances[6] pursuant to the deed restrictions and Builder's Guidelines, Crown Ranch believed the differences between the parties could be settled

---

[4] Plaintiffs allege that Defendant Conine was also employed as an agent of Defendant Landstar Realty Advisors, Inc., but that contention is disputed and will be discussed further.  Defendants Conine and Weingrad's involvement with Crown Ranch is undisputed in the record.

[5] This marks the first known involvement of Defendant Eric Estes in this case.  His employment with Crown Ranch, similar to that of Conine and Weingrad, is undisputed. Defendant Harold Estes is never alleged to have made any contact with Plaintiffs whatsoever.

[6] From all indications, the Crown Ranch ACC actually did grant Plaintiffs a variance from the preferred roof pitch specified in the Builder's Guidelines.  Though Plaintiffs' home plans were eventually rejected as incomplete, the notice confirming such to the Plaintiffs stated that the roof pitch should be raised to six feet over twelve, which is a lower pitch than the minimum of eight feet over twelve included in the Guidelines.

and the relationship could be mended.

Following discussions with Crown Ranch in November and December of 2008, Plaintiffs submitted their preliminary home plans to the Crown Ranch ACC.  During the intervening review period, Plaintiffs expressed their belief that Crown Ranch, through the actions of its agents, violated the Texas Deceptive Trade Practices Act (otherwise known as the "DTPA").  On April 13, 2009, the Crown Ranch ACC gave notice to the Plaintiffs that it could not grant approval of the preliminary plans as submitted, citing a number of deficiencies both in the plans provided (in terms of technical requirements) and the content of those plans (the actual home to be built).   Crown Ranch's notice of April 13, 2009 cited five specific areas of concern: roof pitch, roof color, the plainness of the home, the materials from which the home would be constructed, and the lack of material samples accompanying the plan proposal.

Communication between the parties largely ceased following the ACC's notice in April 2009 until Plaintiffs sent an initial demand letter to Crown Ranch on August 2, 2010.  That demand letter was sent pursuant to the rules and regulations of the DTPA and formed the predicate for the Plaintiffs' Original Petition eventually filed in the 12th Judicial District Court of Grimes County, Texas on or about October 26, 2010.  Plaintiffs named nine defendants in that petition: Crown Ranch Development, Ltd., Estex Inc., Harold J. Estes, Eric L. Estes, Michael Weingrad, John R. Conine, Landstar Realty Advisors, Inc., Woodcreek Development Company, and J. Troy Maxwell.  Through a litany of factual allegations and legal claims, Plaintiffs complained that they had been

generally misled and defrauded by the named defendants, all of whom are or were allegedly associated or en league with Crown Ranch in its alleged attempts to swindle the Plaintiffs.

To address various financial problems unconnected to the Plaintiffs, Crown Ranch filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court on February 21, 2011.[7]  It subsequently removed the state court case to this Court four days later.  After the Court denied Crown Ranch's request to abate this lawsuit, the parties proceeded to conduct further discovery and, prior to the completion of that designated discovery period, Crown Ranch filed the present motion for summary judgment — one of seven such motions[8] eventually filed by eight of the nine named Defendants[9] in this adversary proceeding as well as by the Plaintiffs themselves.  Each of the Defendants sought judgment as a matter of law against Plaintiffs for some or all of the causes of action brought against them, while Plaintiffs sought to have certain issues established before trial.  This memorandum deals solely with the Motion for Summary Judgment filed by Crown Ranch.

---

[7]  Crown Ranch subsequently confirmed a Chapter 11 plan of reorganization by order entered on January 13, 2012 [dkt #328 in case no. 11-90052].

[8]  In addition to the present motion, motions have been filed by the following Defendants:  (1) Harold Estes [BK dkt #72]; (2) Eric Estes [BK dkt #164]; (3) Michael Weingrad [BK dkt #166]; (4) John Conine [BK dkt #165] and the self-styled "*Certain Defendants*" consisting of Defendants, Woodcreek Development Company, Landstar Realty Advisors, Inc., and J. Troy Maxwell [BK dkt #146].  The Plaintiffs have also filed a motion for partial summary judgment [BK dkt #167].

[9]  Defendant Estex, Inc. is the sole defendant not to have filed a motion for summary judgment in this adversary proceeding.

## Discussion

*Summary Judgment Standard*

Crown Ranch brings its Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).[10] Affidavits alone, however, "cannot preclude summary judgment unless they contain competent and otherwise admissible evidence." *Chambers v. Sears Roebuck and Co.*  428 Fed.Appx. 400, 408 (5th Cir. 2011) (*citing* FED. R. CIV. P. 56(e)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial.  If, as in this instance, the burden of persuasion rests on the non-moving party, "the party moving for

---

[10]  Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477, U.S. at 322-323 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (internal citations omitted).  Upon a *prima facie* showing of entitlement to judgment as a matter of law, the non-movant may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.  *Anderson,* 477 U.S. at 248-49 (*citing* FED. R. CIV. P. 56(e)).  If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless in the absence of a genuine issue of material fact to be decided.  The substantive law will identify which facts are material.  *Id.*

To determine whether summary judgment is appropriate, the record presented is viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.  Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, In*c., 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.

-7-

Essentially, if a non-movant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001). It is not the Court's responsibility to scour the record in search of triable issues; if such an issue exists, the party bearing the burden of proof at trial must demonstrate its existence affirmatively.[11] Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.*; *see also de la O v. Housing Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) ["Judges are not like pigs, hunting for truffles buried in briefs."] (*quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

*Plaintiffs' Causes of Action*

The *Plaintiffs' Third Amended Petition (sic)*, filed with leave of the Court on August 2, 2011, identifies nine defendants – four corporate entities and five individuals – but all or nearly all of the factual allegations can be traced to the involvement of the Movant, Crown Ranch Development, Ltd., through its supposed agents. Plaintiffs seek to assess liability against Crown Ranch both vicariously and directly. As to the former,

---

[11] See subsection (c) of Local District Court Rule CV-56, governing the determination of this Motion pursuant to the scheduling order entered in this cause on May 17, 2011, which states, in pertinent part: "The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact."

-8-

Plaintiffs claim that Crown Ranch is responsible for the supposed wrongful acts of at least three individual defendants:[12]  Eric Estes, Michael Weingrad, and John Conine, all of whom represented Crown Ranch in some capacity in the summer of 2008.  As a partnership organized under Texas law, Crown Ranch can, of course, be held liable for the actions of its agents and employees through the doctrine of respondeat superior.  *See Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002) ["[A]n employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired."].  Liability extends to the employer or principal where the employee or agent is acting within the scope of his employment/agency and commits a tortious wrong.[13]  Assuming that a tortious wrong occurred and is proven, each individual defendant also bears responsibility for his own actions.  Various agency-principal relationships and theories of vicarious liability allegedly tie Crown Ranch to each of the other defendants, including Defendants Estex,

---

[12] It is possible to read *Plaintiffs' Third Amended Petition* as claiming vicarious liability on the part of Crown Ranch for the actions of Harold Estes and vice versa, but Plaintiffs never actually allege that Harold Estes was an employee or agent of Crown Ranch.  The allegations against Harold Estes relate entirely to his roles as the owner of Estex, Inc., the general partner of the Debtor, and as the limited partner of the Debtor in his individual capacity.

[13] Neither side has, to date, contested the association of Conine, Weingrad, or Estes with Crown Ranch or whether any supposed actions were inside the scope of that employment.  On the contrary, both sides presented evidence of employee-employer or agent-principal relationships between each of the three individual defendants and Crown Ranch.  The same is not true with respect to the alleged agency relationship between Defendants Landstar and Conine. Plaintiffs claim that Conine was in essence wearing two hats, one each for Crown Ranch and Landstar, throughout the sales process.  Defendants Crown Ranch and Conine dispute that fact.  For the purpose of addressing Crown Ranch's motion, the Court assumes without deciding that all alleged agency relationships exist if not challenged in that motion.

-9-

Inc., the general partner of Crown Ranch, and its primary shareholder, Harold Estes, who is also a limited partner in Crown Ranch.[14]

Virtually all of the causes of action contained in *Plaintiffs' Third Amended Petition* stem from a series of representations or statements allegedly made by Crown Ranch's agents or affiliates in connection with the sale of real property to the Plaintiffs in July 2008. Those alleged statements can be distilled into five general categories of misrepresentation, each of which purportedly establishes, according to the Plaintiffs, a factual foundation for the assessment of liability for common law fraud, fraudulent misrepresentation, and failure to disclose material information. Those five general categories pertain to alleged statements or omissions regarding:

(1)     the viability of Plaintiffs' building plans for the property;
(2)     Crown Ranch's future plans for building amenities;
(3)     the existence of building restrictions at the time of the sale;
(4)     the existence of litigation or potential litigation affecting the property; and
(5)     the existence of a schedule of fines regarding the Crown Ranch development.

---

[14] *Plaintiffs' Third Amended Petition* included multiple separate sections detailing what Plaintiffs described as individual "causes of action" but that are more accurately termed theories of liability. Theories of liability are not independent causes of action in that they are not independent bases for recovery. For example, Plaintiffs claim for fraudulent misrepresentation is a recognized and viable cause of action alleging certain wrongful actions on the part of the named defendants. "Partnership liability," on the other hand, is a theory whereby one defendant or group of defendants can or should be found liable for the actions of other individuals or defendants. Theories of liability can involve factual determinations but do not constitute "causes of action" as the phrase is typically used in legal parlance. The mis-characterized theories of liability in this case include "Agency," *Plaintiffs' Third Amended Petition* at 18-19, ¶¶ 82-83; "Partnership Liability," *id*. at 20, ¶¶ 86-87; "Joint-Enterprise Liability," *id*. at 20-21, ¶¶ 88-89; "Respondeat Superior," *id*. at 21-22 ¶¶ 90-101; and "Vicarious Liability" against Defendants Woodcreek and Crown Ranch, *id*. at 23-24 ¶¶, 102-112 and 24-25, ¶¶ 113-119, respectively. Theories of liability require underlying causes of action to be pled and proved– for an individual or corporate entity to be held liable, it must be held liable *for something*– but unless challenged specifically by each respective motion for summary judgment, the Court need not address each particular theory in detail.

The Plaintiffs also claim that each generalized misrepresentation category provides a factual foundation for causes of action unique to that particular misstatement, including breach of an express warranty, negligence, negligent misrepresentation, breach of contract, and negligent hiring, supervision, and or management.[15]

All causes of action were alleged against all nine defendants, with the exception of the negligent hiring cause of action which targeted only the non-individual defendants — Crown Ranch, Landstar, Woodcreek, and Estex.[16]  Plaintiffs bundled these claims together with allegations of fraud under the Texas DTPA, seeking to access its statutory provisions for treble economic and consequential damages.  They seek a damage award of $825,000 including assessments of economic and actual damages, damages due to repeated behavior, damages for mental anguish, and exemplary damages as authorized by statute.

Although Plaintiffs separately asserted causes of action for fraudulent misrepresentation, fraud by nondisclosure, and common law fraud in their complaint, Texas courts treat those grounds of liability as one and the same.  Fraud by nondisclosure,

---

[15] Many of the causes of action outlined in *Plaintiff's Third Amended Petition* overlap and/or are factually indistinct from each other.  For example, Plaintiffs' allegations regarding purported fraudulent non-disclosures involve information required on the sale documents, the absence of which gives rise to the allegations of breach of express warranty.  Where possible, the Court will address the causes of action together to avoid needless duplication.

[16] Plaintiffs' cause of action for negligent hiring, supervision, and/or management is the only claim against Crown Ranch that does not relate specifically and solely to the misrepresentations and/or non-disclosures allegedly made by its agents on its behalf. *See Plaintiffs' Third Amended Petition* at 19, ¶¶ 84-85.  That claim involves evidence not challenged by Crown Ranch's motion or responsive pleadings.  Without a direct challenge to Plaintiffs' proof on the issue of negligent hiring, supervision, and/or management, that cause of action must survive the summary judgment process.  Crown Ranch elected to forego its opportunity to address that claim in its Motion.

or concealment through silence, is a type of fraudulent misrepresentation. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986) [silence is equivalent to false representation when circumstances impose duty to speak and one deliberately remains silent]. Rather than separate causes of action, the two allegations are different sides to the same coin. *Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 862 (Tex. App.– Dallas 2005, no pet.) ["Misrepresentation and fraudulent concealment are not separate causes of action."] (*citing Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). Similarly, fraudulent misrepresentation is a type of common law fraud. *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). The elements needed to prove each are identical. *Compare Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) [listing the elements of common law fraud in Texas] *with Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663, 680 (Bankr. N.D. Tex. 2011) [listing the elements of fraudulent misrepresentation]. Because the three counts arise from the same set of operative facts and are treated as a singular cause of action under Texas law, if the Court finds that a genuine issue of material fact exists as to one such claim, it must necessarily exist as to the others. *See Nelson*, 170 S.W.3d at 862 [compiling allegedly distinct causes of action for misrepresentation and fraudulent concealment into one of common law fraud].[17]  That

---

[17] *Plaintiffs' Third Amended Petition* also includes claims against Defendant Crown Ranch (and its associated entities, agents, and principals) of fraud in a real estate transaction, a statutory cause of action found in Section 27.01 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE ANN. § 27.01 (Vernon 2011). Such fraud occurs if: (1) a person makes a false representation of a past or existing material fact in a real estate transaction to another person for the purpose of inducing the making of a contract; and (2) the false representation is relied on by the person entering into the contract. *Id.* at §

is particularly true where the veracity of the statements themselves are at issue; all three concepts — common law fraud, fraudulent misrepresentation, or fraud by non-disclosure — inherently rely on the existence of a false representation or the duty to correct a false apprehension.  For that reason, they are collectively addressed.

Because Plaintiffs characterized their primary claims as fraudulent misrepresentation claims, the Court will address them as such.  Causes of action for fraudulent misrepresentations under Texas law require proof of five elements: (1) a representation; (2) that the speaker knew to be false or was made recklessly; (3) made with the intention to induce the plaintiff's reliance; (4) resulting in actual and justifiable reliance (5) that causes injury. *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (*citing Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)); *Arnette*, 454 B.R. at 680.  The entire concept of a "misrepresentation" relies on a factual statement that is false or a promise of future performance made with the intent not to perform.  *Spoljaric*, 708 S.W.3d at 434-35; *Arnette*, 454 B.R. at 681 (internal citations omitted).  A "statement" can either be an overt expression or an omission where one is required. "[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).

---

27.01(a)(1).  Because the elements are nearly identical save the requirement that a real estate transaction be involved (a fact not disputed by any party here), if a genuine issue of material fact exists as to whether a fraudulent misrepresentation occurred, then one must also exist as to whether that statute was violated. Without treading the same ground repeatedly, this statutory cause of action will receive the same treatment as each alleged fraudulent misrepresentation.  Where summary judgment is granted with respect to a statement, so shall it be to this cause of action.

"Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship," *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998), but in the absence of such a relationship, a duty to disclose can arise, for example, "when one makes a partial disclosure and conveys a false impression." *Brown & Brown of Tex., Inc. v. Omni Metals, Inc*., 317 S.W.3d 361, 384 (Tex. App.– Houston [1st Dist.] 2010, pet. denied). Expressions of opinion without any factual underpinning cannot qualify as misrepresentations. *In re Westcap Enter.*, 230 F.3d 717, 726 (5th Cir. 2000). Such expressions qualify as puffery — mere statements of subjective opinion and not objective fact — rather than fraud. *See GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 899 (Tex. App.– Austin 2008, no pet.).

Plaintiffs additionally alleged violations of the DTPA – the Texas Deceptive Trade Practices Act.[18] To prevail on a DTPA claim, Plaintiffs must establish that: (1) one or more defendants violated a specific provision of the Act; (2) such a violation was a producing cause of an injury to them;[19] and (3) they relied on the false, misleading, or

---

[18] *Plaintiffs' Third Amended Petition* states, in pertinent part, that "Plaintiffs would show that Defendants engaged in certain false, misleading, and deceptive acts, practices, and/or omissions actionable under the Texas Deceptive Trade Practices-Consumer Protection Act as alleged herein." *Id*. at 8-9, ¶¶ 20-34. *Plaintiffs' Third Amended Petition* went on to describe violations of the so-called "laundry list" in § 17.41(b)(2), (3), (5), (9), (12), and (24). *Id*. at 10, ¶ 35. Plaintiffs' also alleged that defendants engaged in an "unconscionable action or course of action" such that Plaintiffs are entitled to economic damages or damages for mental anguish pursuant to § 17.50(a)(3). "Unconscionable action or course of action" is defined by § 17.45(5) as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

[19] A "producing cause" requires proof of (1) actual causation in fact, (2) that but for the defendant's conduct the plaintiff's injury would not have occurred, and (3) that the act or omission was such a substantial factor in bringing about injury that liability should be imposed. *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*., 896 S.W.2d 156, 161 (Tex. 1995).

deceptive act or practice to their detriment.  4 TEX. BUS. & COM. CODE ANN. §17.50(a)(1)
(Vernon 2011); *Sheehan v. Adams*, 320 S.W.3d 890, 897 (Tex. App. –  Dallas 2010, no
pet.) (*citing Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 649 (Tex. 1996)).  Just as a
fraudulent misrepresentation action cannot stand if the representation is true, no defendant
can be held liable under the DTPA for "failing to disclose information he did not actually
know." *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995);
*see also Pfeiffer v. Ebby Halliday Real Estate, Inc.*, 747 S.W.2d 887, 889–90 (Tex. App.–
Dallas 1988, no pet.).  That is because under section 17.46(b)(24), the failure to disclose
information requires a defendant to have known information at the time of the transaction
and have failed to bring it to a plaintiff's attention. §17.46(b)(24).  Mere proof that a
defendant should have known the information is not enough.  *Prudential Ins. Co.*, 896
S.W.2d at 162;  *Rich v. Olah*, 274 S.W.3d 878, 887 (Tex. App.– Dallas 2008, no pet.).
Subjective knowledge and/or intent regarding affirmative misrepresentations, however,
are not generally required elements for recovery under the Texas DTPA.  Several of the
individual causes of action listed on the "laundry list" of DTPA claims include elements
of scienter but most do not.  4 TEX. BUS. & COMM. CODE §17.46(b)(1)-(27).  Thus,
whether under the DTPA or under common law, the Plaintiffs must first prove that any
representations made were actually false in order to recover for alleged
misrepresentations.  *Id*.  § 17.50(a)(1) [requiring false, misleading, or deceptive behavior
under the DTPA]; *Rio Grande Royalty Co., Inc.*, 620 F.3d at 468 [listing falsity as a
required element for a fraudulent misrepresentation].

The five generalized misrepresentations[20] alleged by the Plaintiffs each fit within the Texas definition as either a statement of present fact (statements ## 1, 3, 4, and 5) or a promise of future performance (statement #2).  In each of the five categories, Crown Ranch in its motion assailed the first element, which requires the existence of a material misrepresentation by the Defendant or an agent for which it is responsible.  Crown Ranch attacked that element in all five categories either by presenting affirmative evidence negating Plaintiffs' assertion of a misrepresentation or, alternatively, pointing out the Plaintiffs' lack of evidence as to that element.  Further, Crown Ranch's integration argument pertaining to representations about amenities is, in effect, a challenge to Plaintiffs' reliance, and is the only instance where Crown Ranch challenged something other than the first element.[21]

*Category 1:   Building Plans.*

The Plaintiffs allege without contradiction that they first visited Crown Ranch in June 2008 with the hope of constructing a home that took advantage of natural landscaping features and was as energy-efficient as reasonably possible.  Both sides agree that when the original meeting took place between Plaintiffs and Defendant Conine, the

---

[20]  Again, the five alleged categories of statements/omissions pertain to:
(1)      the viability of Plaintiffs' building plans for the property;
(2)      Crown Ranch's future plans for building amenities;
(3)      the existence of undisclosed building restrictions at the time of the sale;
(4)      the existence of undisclosed litigation or potential litigation affecting the property; and
(5)      the existence of an undisclosed schedule of fines regarding the Crown Ranch development.

[21]  Because Crown Ranch did not challenge elements two through five as to each of the other purported misrepresentations, they need not be addressed.

two sides discussed Plaintiffs' plans, at least in a general way, and whether the plans would be acceptable given the restrictions of the Crown Ranch development.  The conversations around this time eventually included Defendant Weingrad.  The summary judgment evidence is contradictory as to what exactly was said or promised by Defendants Conine and Weingrad and there is a serious dispute as to whether those statements have any legal effect regarding the subsequent controversy over approval of the Plaintiffs' building plans.

As to this first generalized category, Crown Ranch's motion must be denied due to the existence of a genuine issue of material fact.  The Plaintiffs provided competent summary judgment evidence in the form of sworn affidavits regarding whether Crown Ranch, through its agents Defendants Conine and Weingrad, made representations about the viability of Plaintiffs' building plans at the time of the sale.[22]  In her deposition testimony, Brenda Page claims that Crown Ranch's agents gave the Plaintiffs full assurances that the house they envisioned could be built in the Crown Ranch development.[23]  The Crown Ranch representatives refute those contentions and have testified that any damages allegedly suffered by the Plaintiffs were a result of their own refusal to abide by and participate in the full plan submission/variance process with the Crown Ranch Architectural Control Committee.  Those issues regarding alleged misrepresentations regarding the existence of building plans must be decided in a trial on

---

[22] Plaintiffs' Ex. P, pg. 1.

[23] Plaintiffs' Ex. O, pgs. 18-19.

the merits.  Therefore, summary judgment must be denied with respect to all causes of action related to this specific representation, including common law fraud, fraudulent misrepresentation, fraud by non-disclosure, fraud in a real estate transaction, breach of contract, negligent misrepresentation, and misrepresentation or actionable non-disclosure under the Texas DTPA.

*Category 2:  Amenities.*

As for the second category of alleged misrepresentations – those pertaining to the future building of amenities – Crown Ranch's motion must also be denied.  For those alleged misrepresentations by Crown Ranch regarding the future building of parks, recreation centers, or other amenities at the development to be actionable under Texas law, such statements would have to be intentionally false when made with an intent to procure the Plaintiffs' reliance upon such false promises or, as to a promise of future performance, such statement would have to be made with an intent not to perform as promised.

Questions about Crown Ranch's subjective intent and whether it ever planned to build any amenities in the subdivision require credibility determinations that can only take place after a trial on the merits.  As with the previous category of representations relating to Plaintiffs' building plans, Plaintiffs provided competent summary judgment evidence in the form of their own sworn affidavits and the deposition testimony of Brenda Page that is sufficient to create a genuine issue of material fact.  The integrated Unimproved Property Contract, which includes the HUD Single Family Exemption

addendum, also included numerous representations about Crown Ranch's intent to create parks, recreational facilities, and the like inside the development. Whether any Crown Ranch representations were made without an intent to perform them, whether arising from that integrated contract or otherwise made by Crown Ranch personnel in conversations antecedent to the creation of that document, presents a genuine issue of material fact.

Crown Ranch argues, however, that the scope of representations which can be deemed actionable in this scenario, and upon which a trial is necessary, is significantly affected by the presence of an integration clause in the Earnest Money Contract. That provision of the Unimproved Property Contract states that "This contract contains the entire agreemen[t] of the parties and cannot be changed except by their written agreement."[24] According to Crown Ranch, the language of the contract therefore subsumes everything that preceded it in time and scope. If true, the operation of the integration clause would prevent Plaintiffs from asserting any causes of action based on representations not actually contained in the Unimproved Property Contract and its integrated addenda.[25]

---

[24] Defendant's Ex. E, ¶ 22.

[25] As the Court noted *supra*, the integrated contract in this case contains the "Contract Addendum for Use in Connection with the Single Family Residence Exemption (15 U.S.C. 1702(b)(5) and 24 CFR 1710.10) Under the Interstate Land Sales Full Disclosure Act," which is often referenced in a shorthanded manner as the Single Family Exemption form or simply the "HUD Exemption," as the Unimproved Property Contract termed it here. That addendum has been provided to the Court as Defendant's Exhibit M. The focus of the Interstate Land Sales Full Disclosure Act is on the subdivision and sale of large tracts of empty land, and the Single Family Exemption "provides an exemption for: the sale or lease of a lot which is located within a municipality or county where a unit of local government specifies minimum standards for the development of subdivision lots taking place within its boundaries." *George v. Lochenheath Prop.*, 2008 WL 4377797, at *7 (W.D. Mich. 2008); *see* 15 U.S.C.A. § 1702(a); *see also Nickell v. Beau View of Biloxi, LLC.*, 636 F.3d 752, 755 (5th Cir. 2011) [discussing generally the

Crown Ranch is correct that Texas law generally recognizes the role integration clauses play in proscribing the boundaries of contractual agreements.  A fully-integrated written agreement is a final and complete expression of all the terms agreed upon by the parties, and where "a contract contains a merger or integration clause, the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract, and it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence." *ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 719 n.10 (Tex. App.– Eastland 2007, pet. denied) (*citing Barker v. Roelke*, 105 S.W.3d 75, 83 (Tex. App.– Eastland 2003, pet. denied); *see also Transcontinental Realty Investors, Inc. v. John T. Lupton Trust*, 286 S.W.3d 635, 641-642 (Tex. App.– Dallas 2009, no pet.); *Smith v. Smith*, 794 S.W.2d 823, 827 (Tex. App.– Dallas 1990, pet. denied).[26]

The validity of Crown Ranch's argument depends upon whether, as a matter of law, the integration or merger clause can operate to disclaim Plaintiffs' reliance on representations made outside and prior to the contract documents themselves.  Such an argument fails under Texas law.  The clause contained in the Unimproved Property Contract cannot negate the reliance element of Plaintiffs' claims for fraud relating to the future construction of amenities.  For more than fifty years, the rule in Texas has been

---

application of the "100-lot" and subdivision exemptions to the ILSA].

[26] Extrinsic evidence is admissible to show (1) the execution of a written agreement was procured by fraud, (2) an agreement was to become effective only upon certain contingencies, or (3) the parties' true intentions if the writing is ambiguous. *Gonzalez v. United Bhd. of Carpenters & Joiners of Am., Local 551*, 93 S.W.3d 208, 211 (Tex. App – Houston [14th Dist.] 2002, no pet.).

"that a written contract [even] containing a merger clause can [nevertheless] be avoided for antecedent fraud or fraud in its inducement and that the parol evidence rule does not stand in the way of proof of such fraud." *Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 239 (Tex. 1957) (*citing Bates v. Southgate*, 31 N.E.2d 551, 558 (Mass. 1941) [approving of the "sound public policy" supporting the rule on merger clauses]. "[T]he law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it." *Reaves*, 307 S.W.2d at 239. The sole exception to this rule is inapplicable to the present dispute.[27] Generally, standard merger or integration clauses do not speak to reliance at all and instead seek only to ensure that the contract at issue invalidates any previous *agreements*, not representations. *Italian Cowboy P'ship Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 334 (Tex. 2011).[28]

---

[27] Texas courts recognize one exception where sophisticated parties represented by counsel disclaim reliance on representations in writing. That disclaimer can be binding and can entirely negate the element of reliance in a suit for fraudulent inducement. *Schlumberger*, 959 S.W.2d at 179. In *Schlumberger*, the contract provided, "[N]o promise or agreement which is not herein expressed has been made to him or her in executing this release, and that none of us is relying upon any statement or representation of any agent of the parties being released hereby. Each of us is relying on his or her own judgment and each has been represented by ... legal counsel in this matter." *Schlumberger*, 959 S.W.2d at 180 (emphasis omitted). The key is the intent of the parties. In *Schlumberger*, the Texas Supreme Court found the "requisite clear and unequivocal expression of intent necessary to disclaim reliance" in long-term settlement discussions between sophisticated parties "attempting to put an end to their deal." *Id.* at 179-80. In each case where the Texas Supreme Court has found intent to disclaim reliance, it did so based on specific and unequivocal language evidencing that intent. *See Schlumberger*, 959 S.W.2d at 180; *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 54 n. 4 (Tex. 2008). In finding that the parties in *Forest Oil* had successfully disclaimed reliance on representations in their contractual agreement, the Texas Supreme Court clarified the factors to consider under Texas law, stressing that: (1) the terms of the contract were negotiated, rather than boilerplate ... (2) the complaining party was represented by counsel, (3) the parties dealt with each other in an arm's length transaction, (4) the parties were knowledgeable in business matters; and (5) the release language was clear. *Forest Oil*, 267 S.W.3d at 60.

[28] *See also, e.g. Fazio v. Cypress/GR Houston I, L.P.*, ___ S.W.3d ___, 2012 WL 159929, at *8-9 (Tex. App. – Houston [1st Dist.], Jan. 19, 2012, no pet.); *Tellepsen Builders, L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 699 (Tex. App.– Houston [1st Dist.] 2010, pet. denied); *Va. Power Energy*

In this case, the integration clause speaks solely to the terms of the agreement itself and limits the ability of the parties to alter those terms.  It does not reference reliance on any preceding representations or promises in any way and cannot be construed to have disclaimed reliance in any way.  As in *Italian Cowboy*, "the only reasonable interpretation of the contract language at issue here is that the parties to this [agreement] intended nothing more than the provisions of a standard merger clause, and did not intend to include a disclaimer of reliance on representations."  *Italian Cowboy*, 341 S.W.3d at 334.[29]  Accordingly, Crown Ranch fails in its attempt to utilize the integration clause as a shield against liability for an alleged fraudulent misrepresentation and, because a genuine issue of material fact exists as to all of the elements of a fraudulent misrepresentation pertaining to the future building of amenities by Crown Ranch, summary judgment in favor of Crown Ranch in this category must be denied.  Accordingly, all of Plaintiffs' alleged causes of actions relating to amenities —  common law fraud, fraudulent misrepresentation, fraud by non-disclosure, fraud in a real estate transaction, breach of contract, negligent misrepresentation, and misrepresentation or actionable non-disclosure under the Texas DTPA — remain to be tried in this action.

---

*Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 406 (Tex. App.– Houston [14th Dist.] 2009, pet. denied).

[29] Judge Posner, sitting with the Seventh Circuit in 2002, summarized the majority view of integration clauses: "[A]ll an integration clause does is limit the evidence available to the parties should a dispute arise over the meaning of the contract.  It has nothing to do with the whether the contract was induced ... by fraud." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002) (Posner, J.) (*cited with approval by Italian Cowboy*, 341 S.W.3d at 335).  The integration clause in this case operates no differently.  The only intent evident from its language is to proscribe the boundaries of the contract itself in terms of parol evidence, not to disclaim or roll-in representations made previously.

*Category 3:  Additional Restrictions.*

The third category of alleged misrepresentations concerns the existence of additional property restrictions at the time of the sales transaction.  Crown Ranch contends in its motion that the Plaintiffs have tendered no summary judgment evidence that any false statement was made at that time by Crown Ranch representatives regarding property restrictions from which a genuine issue of fact could arise.

The parties agree that the Plaintiffs were given a copy of the Crown Ranch Declaration of Covenants, Conditions, and Restrictions (hereafter the "CC&R") at or around the time of their first visit to the subdivision.[30]  The parties agree that some time *after* the sale, Crown Ranch forwarded to Plaintiffs a set of the "Builder's Guidelines" for building within the subdivision — guidelines that are arguably more restrictive in some areas than the CC&R and less in others.[31]  Most importantly, they also agree that the Plaintiffs were told prior to or at the time of the sales transaction that the restrictions expressed in the CC&R were the *only* restrictions that existed with respect to their

---

[30] It is important to note that, though the Plaintiffs have alleged that the representation made by Crown Ranch that there were no additional property restrictions were false, they have <u>not</u> alleged that approval of their preliminary plans was wrongfully withheld or that Crown Ranch applied restrictions for which Plaintiffs had no notice. Thus, although unreasonable withholding of approval is a cognizable cause of action under Texas law, *see Davis v. Huey*, 620 S.W.2d 561, 565–66 (Tex. 1981) [covenants requiring submission and approval of building plans "are valid and enforceable so long as the authority to consent is exercised reasonably and in good faith"], it is not asserted in the *Plaintiffs' Third Amended Petition*.

[31] According to Crown Ranch, the primary goal of the Guidelines is to explicate the CC&R and to demonstrate to a potential purchaser how Crown Ranch interprets the CC&R in light of the subdivision's stated goals.  Crown Ranch also asserts in its motion that the Builder's Guidelines, which were unsigned, undated, and unrecorded with appropriate authorities in Grimes County, do not constitute actual, legal restrictions on the Plaintiffs' property. Crown Ranch's Motion at pp. 15-18, ¶¶ 30-39.  In other words, the guidelines are, in fact, merely guidelines.

property.[32]  The question raised by the summary judgment motion in this category relates

to the truth or falsity of that representation.[33]

Falsity is a required element of proving the existence of a fraudulent

misrepresentation and a misrepresentation actionable under the DTPA.  A statement that

is true cannot be a misrepresentation.  In support of its motion on this point, Crown Ranch

provided summary judgment evidence in the form of Michael Weingrad's sworn

affidavit[34] and deposition testimony,[35] and the deposition testimony of John Conine,[36] that

the Builder's Guidelines were not finalized until late October or early November of 2008,

some four months after the Pages had purchased their lot.[37]  If that timeline is accurate,

---

[32] Further, Crown Ranch contends that, even if the Guidelines had constituted legal restrictions, Plaintiffs would have taken their property free and clear of those restrictions in any event due to lack of notice.  *See, e.g.*, *Jennings v. Bindseil*, 258 S.W.3d 190, 197 (Tex. App.– Austin 2008, no pet.) (*citing Davis v. Huey*, 620 S.W.2d 561, 565–66 (Tex.1981)) [holding that a real estate purchaser is bound only by those restrictive covenants of which he has actual or constructive notice].  Notwithstanding some indication raised by other evidence submitted as to subsequent summary judgment motions that the initial draft of the Guidelines may have occurred soon after the closing, the Plaintiffs failed to supplement its response to the Crown Ranch motion with any such evidence and Crown Ranch had no opportunity to respond thereto.  Thus, because the Plaintiffs have failed to present summary judgment evidence as to this Motion regarding the existence of the Builder's Guidelines or other evidence regarding the purported falsity of the initial statements by Crown Ranch representatives regarding the scope of any restrictions, those topics need not be addressed in this memorandum.

[33] This topic focuses upon the truth of whether the CC&R expressed the only restrictions at the time of the Plaintiffs' property transaction and, impliedly, whether the Builder's Guidelines came into existence until some later time.

[34] Crown Ranch's Ex. O, Affidavit of Michael Weingrad, ¶¶ 6, 7.

[35] Crown Ranch's Ex. R, Weingrad Depo, 48:11-24; 59:17; 60:1; 63: 14-19.

[36] Crown Ranch's Ex. S, Conine Depo., generally pp. 14-23; 37:16-20.

[37] The parties agree that the Builder's Guidelines were delivered to Plaintiffs in an electronic format on or about November 8, 2008 as part of an email exchange between Mr. Page and Defendant Conine.  That exchange, coupled with the affidavit and deposition testimony of Defendants Weingrad and

any earlier representations denying the existence of additional restrictions would necessarily have been true. Thus, the Court looks for competent summary judgment evidence from the Plaintiffs to support their contention that the representation that the CC&R was the only existing set of restrictions at that time was a false statement.

The Plaintiffs have not tendered any such summary judgment evidence. There is no evidentiary support provided for the proposition that Builder's Guidelines actually existed at any earlier time than that asserted by Crown Ranch. Nor is there is any other summary judgment evidence tendered by the Plaintiffs that would otherwise create a genuine issue of material fact as to the alleged falsity of the representations on this topic or whether any duty of disclosure was violated by Crown Ranch at that time.[38] Because the falsity of the statements denying the existence of additional restrictions is a required element for the Plaintiffs' causes of action against Crown Ranch for common law fraud, fraudulent misrepresentation, fraud by non-disclosure, fraud in a real estate transaction, breach of contract, negligent misrepresentation, misrepresentation or actionable non-disclosure under the Texas DTPA, and the breach of an express warranty requiring the disclosure of all existing property restrictions, summary judgment shall be granted in favor of Crown Ranch on all of those counts in the complaint as they relate to the third misrepresentation category.

---

Conine, forms the entirety of the Court's record relating to the creation and distribution of the Builder's Guidelines.

[38]   Clearly a seller has no duty to disclose information he does not know or documents that do not exist. *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App. – Dallas 2010, pet. denied).

*Category 4:  Litigation Affecting the Property.*

The fourth alleged category of misrepresentation concerns the seller's disclosures in the "Unimproved Property Contract" constituting the sales transaction between the parties.  Those disclosures, as mandated by state law, required Crown Ranch to state affirmatively whether it possessed knowledge of  "any pending or threatened litigation affecting the property" at that time.  Crown Ranch answered the disclosure in the negative.  Plaintiffs claim that the existence of litigation at that time between Crown Ranch and David Cromwell for breach of an alleged oral contract before a Texas state court in Montgomery County, Texas — an action in which Crown Ranch allegedly filed an answer several months prior to the sales closing — makes Crown Ranch's negative answer a fraudulent misrepresentation, a failure to disclose material facts, a breach of an express warranty in the sales contract, and a false representation under the Texas DTPA.

This disclosure apparently seeks to fulfill the mandate of §5.008 of the Texas Property Code which requires a seller of residential real property to "give to the purchaser of the property a written notice as prescribed by this section or a written notice substantially similar to the note prescribed by this section." TEX. PROP. CODE ANN. §5.008(a) (Vernon Supp. 2011).  Included among the questions required by that statute to be answered is the following:  "Any lawsuits directly or indirectly affecting the Property." §5.008(b)(6).  No case law was cited by the parties nor located by the Court which construes that statutory language with reference to pending litigation.

However, the Fifth Circuit construed similar language in *Martin v. Xarin Real*

*Estate, Inc.*, 703 F.2d 883, 889-90 (5th Cir. 1983) in a diversity case based upon Texas law (but not §5.008) in which the only existing litigation was an unrelated suit for damages that in no way affected the seller's title to a shopping center or his ability to transfer that title to the buyer.  In that instance, in which the pending litigation did not pertain to the condition of the property to be sold nor the seller's capacity to convey the property, the Circuit affirmed the district court's conclusion that disclosure of that litigation was not required.

The *Martin* analysis is sound and instructive in this context.  Even in a strict interpretation of §5.008 (which incorporates the modifiers "directly or indirectly" not utilized in the present case), the clause "affecting the property" still modifies the word "litigation" and limits the required seller's disclosures only to those existing or threatened lawsuits that might bear on the seller's ability to convey good and marketable title to the property.  The Plaintiffs' supposition that Crown Ranch as the seller in this transaction was required to disclose to the Plaintiffs *any* litigation in which it might have been involved at the time is erroneous.  Under the *Martin* standard, whatever damages that might ultimately arise from the future adjudication of the Cromwell suit (assuming Crown Ranch was ultimately found liable and judgment issued) could not affect the title conveyed to the Plaintiffs in their sales transaction or otherwise affect the transaction itself.  It is uncontested that the Cromwell litigation did not directly relate to, nor affect, the property to be conveyed to the Plaintiffs, nor did that pending lawsuit affect Crown Ranch's ability to convey good and marketable title to the property to the Plaintiffs.  It is

-27-

not enough, as Plaintiffs have alleged, that the litigation might ultimately have an effect on the value of the property conveyed, particularly since the liability of Crown Ranch in the pending litigation had not yet been established at the time of the real estate conveyance.  Because the Plaintiffs cannot demonstrate the existence of any "litigation affecting the property" at the time of the sales transaction, Crown Ranch is entitled to summary judgment in this fourth category with regard to any alleged failure to disclose information related to litigation, including Plaintiffs' claims for breach of an express warranty, common law fraud, fraudulent misrepresentation, fraud by non-disclosure, fraud in a real estate transaction, breach of contract, negligent misrepresentation, and misrepresentation or actionable non-disclosure under the DTPA in that context.

*Category 5:  Fine Schedule.*

The final category regarding misrepresentation relates to the "Fine Schedule" transmitted to the Plaintiffs with the Builder's Guidelines in early November 2008.  This category is similar to the issue involving additional restrictions in that the Plaintiffs are contending that Crown Ranch committed an actionable non-disclosure by failing to reveal the existence of the Fine Schedule at the time of the real estate closing.  Unlike the additional restriction issue, Crown Ranch's Motion addressed the fine schedule issue only tangentially,[39] and did not provide applicable summary judgment evidence regarding the

---

[39] In Crown Ranch's *Reply to the Pages' Response* (dkt #173), Crown Ranch argued that Plaintiffs were on notice of the fine schedule because the CC&R contemplated the future existence and assessment of such fines.  Plaintiffs, however, are not challenging the ability of Crown Ranch or its ACC to promulgate fine schedules, but rather the existence of this particular fine schedule at the time of the sales transaction and the fact that it was not disclosed to the Pages at that time.

timeline under which the Fine Schedule was promulgated.  Accordingly, a genuine issue of material fact remains regarding the existence of the Fine Schedule at the time of the sales transaction and, to the extent requested, summary judgment for Crown Ranch as to the Plaintiffs' causes of action for common law fraud, fraudulent misrepresentation, fraud by non-disclosure, fraud in a real estate transaction, breach of contract, negligent misrepresentation, and false representations under the Texas DTPA pertaining to the Fine Schedule must be denied.

## Conclusion

For the above-stated reasons, the Motion for Summary Judgment filed by Crown Ranch Development, Ltd. is granted in part and denied in part, such that summary judgment is rendered in favor of Crown Ranch on any alleged breach of an express warranty.  Summary judgment is also rendered in favor of Crown Ranch on any alleged common law fraud, fraudulent misrepresentation, fraud by non-disclosure, fraud in a real estate transaction, breach of contract, negligent misrepresentation, and false representation under the Texas DTPA arising from any allegedly false statements regarding the existence of additional property restrictions at the time of the sales transaction (category 3).  Summary judgment is also rendered in favor of Crown Ranch on any alleged common law fraud, fraudulent misrepresentation, fraud by non-disclosure, fraud in a real estate transaction, breach of contract, negligent misrepresentation, and false representation under the DTPA arising from any allegedly false statements regarding the existence of any litigation affecting the property at the time of the sales

transaction (category 4).

In all other respects, the Motion for Summary Judgment filed by Crown Ranch is

denied.  Accordingly, the Plaintiffs' claims *against Crown Ranch* pertaining to common

law fraud, fraudulent misrepresentation, fraud by non-disclosure, fraud in a real estate

transaction, breach of contract, negligent misrepresentation, and false representation

under the DTPA arising from the statements and omissions in the three remaining

statement categories —

category 1:  the viability of Plaintiffs' building plans for the property;
category 2:  Crown Ranch's future plans for building amenities; and
category 5:  the existence of a schedule of fines regarding the Crown Ranch development.

shall be determined at a trial on the merits.[40]

An appropriate order will be entered consistent with this opinion.

Signed on 03/29/2012

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[40] *Plaintiffs' Third Amended Petition* also included a claim against all company defendants in this case for negligent hiring, supervision, and management.  Because that allegation was not addressed by Crown Ranch's motion, that claim against Crown Ranch shall also be determined at a trial on the merits.

**-30-**